ALC/ABS:MGD/CMM
F. #2018R02072

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MATHEW JAMES,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  AUG 22 2019  ★

LONG ISLAND OFFICE

I N D I C T M E N T

Cr. No. **C R  19  3 8 2**

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1),
1028A(a)(1), 1028A(b), 1028A(c)(5),
1343, 2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

**SEYBERT, J.**

**SHIELDS, M.J.**

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    The Insurance Companies

    1.    Between January 2014 and July 2019, Optum, Inc., HealthFirst, Inc., Anthem Insurance Companies, Aetna Inc., Cigna Healthcare and EmblemHealth (each individually, an "Insurance Company," and collectively, the "Insurance Companies") were nationwide private health insurance programs under which medical benefits, items and services were provided to individual beneficiaries. As such, the Insurance Companies constituted "health care benefit programs," as defined by Title 18, United States Code, Section 24(b).

    2.    In order to receive payment for a service covered by an Insurance Company, healthcare providers were required to submit claims for payment electronically or

in writing.   The claim process varied by Insurance Company, but generally required the

healthcare provider to identify, among other information, the medical provider, the patient

and the services rendered.   In submitting a claim to an Insurance Company for these and

other procedures, a healthcare provider certified, among other things, that the services were

actually provided to the beneficiary and that the services were medically necessary.

3.      Each claim identified the service or services rendered using billing

codes, also known as current procedural terminology codes ("CPT Codes"), which

specifically identified the medical service or services provided to the beneficiary.   The

amount an Insurance Company paid a healthcare professional on a claim was normally

determined by certain rates and benefits set forth in the relevant health plan.

B.      The Defendant

4.      The defendant MATHEW JAMES was a third-party medical biller who

was engaged to provide billing services for physicians across the United States.   JAMES's

physician customers were primarily plastic or orthopedic surgeons who were out-of-network[1]

for the Insurance Companies.   JAMES was the owner and operator of medical billing

companies Leale Billing Corp., Leale Inc., Remm Consultants, Inc. and Elite Industrial Ltd.

JAMES maintained his medical billing office at 24 Forsythe Drive, East Northport, New

York 11731.

5.      As a third-party biller, the defendant MATHEW JAMES submitted

claims to the Insurance Companies on behalf of his physician customers, and, when

---

[1]      An out-of-network physician was a physician who did not have a contract with
an Insurance Company setting forth the amount of money the physician would be paid for
rendering care to an Insurance Company member.

necessary, requested reconsideration and pursued appeals of denied claims.   JAMES typically earned a commission-based payment, in the form of a percentage of the amount paid by the Insurance Companies, on the claims that he submitted on behalf of his physician customers.

II.    The Fraudulent Scheme

    A.    Wire Fraud

      6.    The Insurance Companies commonly declined to pay claims that had been submitted by the defendant MATHEW JAMES.   This happened for various reasons, including, but not limited to, the submission of claims using incorrect CPT codes.   In particular, between approximately January 2014 and March 2019, JAMES commonly used incorrect CPT codes to bill for medical procedures that were not actually performed by the physicians or to indicate that procedures performed were more serious, complicated or emergent than they in fact were.   Claims submitted using incorrect CPT codes, if paid, normally resulted in a larger payment to the physicians, and, therefore, to JAMES by way of his commission-based payment, than if the claims had been billed using the correct CPT codes.

      7.    For example, the defendant MATHEW JAMES regularly caused to be submitted claims for complex wound cleansing and closure procedures (such as the removal of debris or dead tissue) when the actual procedure that had been performed was a comparatively minor wound closure (such as the placement of stitches).   The Insurance Companies generally paid far more for a complex wound repair than they did for a simple wound closure.

8.    When claims were denied by the Insurance Companies, the defendant MATHEW JAMES engaged in various deceptive tactics to induce the Insurance Companies to reconsider and pay the claims, including, but not limited to, impersonating patients and patients' relatives, without those individuals' authorization, and asserting that the patients were at risk of being referred to a collection agency for failure to pay their medical bills.

9.    As part of the scheme, the defendant MATHEW JAMES used interstate wires to contact the Insurance Companies and induce them to pay the denied claims.    In particular, JAMES commonly called the Insurance Companies, most or all of which were located outside of New York, using Voice Over Internet Protocol ("VoIP") telephone numbers.    VoIP calls were made over the Internet, and enabled the caller to mask his or her geographic location and appear to be calling from a different city or state.    An electronic device such as a computer or cellular telephone was required to make a call using VoIP technology.

10.    In or about and between July 2015 and June 2019, the defendant MATHEW JAMES placed over 150 telephone calls to the Insurance Companies in furtherance of the scheme, most of which were made using VoIP technology to mask or falsify JAMES's geographic location.    For example, on or about July 25, 2018, at approximately 4:01 p.m., JAMES used VoIP technology to place a telephone call to a call center located outside of the United States maintained by Insurance Company A, an entity the identity of which is known to the Grand Jury, for the purpose of fraudulently inducing the Insurance Company to pay a denied claim.

B.    Aggravated Identity Theft

11.    In the course of carrying out his medical billing activities, the defendant MATHEW JAMES acquired personal identifying information ("PII") for individual patients, including names, medical insurance identification numbers and social security numbers, as well as confidential health information protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

12.    One means by which the defendant MATHEW JAMES regularly carried out his wire fraud scheme was by using the patients' PII and HIPAA-protected information to impersonate them or their relatives.   On calls to the Insurance Companies, JAMES asserted that the patient or relative he was impersonating was being billed by the doctor for the balance of the fees that the relevant Insurance Company had not paid. JAMES would then insist that the relevant Insurance Company protect the person being impersonated by paying the amount being demanded by the physician so that the impersonated patient's or relative's bill would not be referred to a collection agency.

13.    For example, a claim for wound cleaning related to Patient A, a minor whose identity is known to the Grand Jury, was not paid by Insurance Company B, an entity the identity of which is known to the Grand Jury, to which the defendant MATHEW JAMES had submitted the claim.   However, after a VoIP call on or about April 3, 2018 by JAMES to Insurance Company B, in which he impersonated Patient A's father, an individual whose identity is known to the Grand Jury, by using Patient A's name and Patient A's father's name to identify himself, the Insurance Company paid the claim for wound cleaning.

COUNT ONE
(Wire Fraud)

14.     The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

15.     In or about and between May 2014 and July 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MATHEW JAMES, together with others, did knowingly and intentionally devise a scheme and artifice to defraud one or more of the Insurance Companies, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT TWO
(Aggravated Identity Theft)

16.     The allegations contained in paragraphs one through 13 are realleged and incorporated as if fully set forth in this paragraph.

17.     In or about and between July 2015 and July 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MATHEW JAMES, together with others, during and in relation to the crime charged in Count One, did knowingly and intentionally transfer, possess and use, without

lawful authority, one or more means of identification of one or more persons, to wit: Patient A and Patient A's father, knowing that the means of identification belonged to other persons.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

18.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

19.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

8

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F.#: 2018R02072

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

MATHEW JAMES,

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 982(a)(7), 982(b)(1), 1028A(a)(1), 1028A(b),
1028A(c)(5), 1343, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____

Foreperson

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

Clerk

*Bail,* $ _____

***Miriam L. Glaser Dauermann, Trial Attorney, (718) 254-7575 &***
***Catherine M. Mirabile, Assistant U.S. Attorney, (631) 715-7850***